Ms. Katie D. Tucker Executive Director Department of Revenue 102 Carlton Building Tallahassee, Florida 32399-0100
Dear Ms. Tucker:
This is in response to your request for my opinion on substantially the following questions:
1. Are the rents charged by port authorities, hospital authorities, and housing authorities subject to sales tax under Ch. 212, F.S., following the repeal by s. 5, Ch. 86-166, Laws of Florida, of the sales tax exemptions enumerated in ss. 125.019,154.2331, 159.15, 159.31, 159.50, and 159.708, F.S.?
2. If such rents are already pledged on July 1, 1987, to defray the cost of bonds issued by such authorities, does this fact render the rents exempt from the sales tax under theories of impairment of contract?
3. Does the answer to Questions One and Two change if the bonds recited that the rents are exempt because the local government's resolution to issue the bonds was passed at a time when Florida law provided an exemption of the rents from sales tax?
SUMMARY
 1. The specific exemptions from taxation contained in ss. 125.019, 154.2331, 159.15, 159.31, 159.50, and 159.708, F.S., have been superceded by s. 212.08(13), F.S. Therefore, the rental of real property which was previously exempt pursuant to those statutory provisions is a taxable privilege under s. 212.031, F.S.
 2. The imposition of a tax pursuant to s. 212.031, F.S., supra, on the business of renting real property by port authorities, housing authorities, and hospital authorities, when rent monies were pledged by contract to defray the cost of certain bonds, would not appear to impair the constitutionally protected right to contract between those authorities and the bondholders.
 3. The laws in force at the time a contract is entered into are incorporated as provisions of the contract without the necessity of expressly including such provisions. Thus, my answers to Questions One and Two would not be effected by express mention in a local government's resolution to issue bonds of the exemptions contained in ss. 125.019, 154.2331, 159.15, 159.31, 159.50, or 159.708, F.S.
QUESTION ONE
Section 212.08(13) F.S., provides that:
 No transactions shall be exempt from the tax imposed by this chapter except those expressly exempted herein. All laws granting tax exemptions, to the extent they may be inconsistent or in conflict with this chapter, including, but not limited to, the following designated laws, shall yield to and be superseded by the provisions of this subsection: ss. 125.019, 153.76, 154.2331, 159.15, 159.31, 159.50, 159.708. . . .
This provision became effective July 1, 1987.[1] The language of the statute clearly repeals or supercedes the exemptions contained in the sections specifically enumerated.[2]
Several of the specific exemptions set forth in s. 212.08(13), F.S., supra, however, were amended in 1986. Sections 159.15,159.50, and 159.708, F.S., were amended by Ch. 86-152, Laws of Florida.[3] The effective date for these amendments was July 1, 1986.[4] The last expression of legislative will is the law in cases of conflicting provisions in the same statute or in different statutes; the last in point of time or order of arrangement in such statutes prevails.[5] Applying this rule to the statutes under consideration, s. 212.08(13), F.S., as amended, became effective later in time than the specific statutory exceptions referenced therein. Further, when two statutes relate to common things or have a related purpose, a construction of these provisions should be adopted which harmonizes and reconciles the statutory provisions so as to preserve the force and effect of each.[6] Under accepted rules of statutory construction, s.212.08(13), F.S., and ss. 159.15, 159.50, 159.708, F.S., should be read together and harmonized. Thus, the statutory exemptions from the taxes imposed by Ch. 212, F.S., were valid and viable until superceded on July 1, 1987, by s. 212.08(13), F.S., supra.
Therefore, as of July 1, 1987, ss. 125.019, 154.2531, 159.15,159.31, 159.50, and 159.708, F.S., no longer provided an exemption from taxation pursuant to Ch. 212, F.S., for the transactions described therein.
In the absence of such an exemption these transactions fall within the scope of Ch. 212, F.S., which imposes a tax on sales or use of tangible personal property, admissions, and rentals.[7] As stated in s. 212.031(1)(a), F.S., "[i]t is declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of renting, leasing, letting, or granting a license for the use of any real property. . . ."[8] A person is defined[9] to include "any individual, firm, copartnership, joint adventure, association, corporation, estate, trust, business trust, receiver, syndicate, or other group or combination acting as a unit and includes any political subdivision, municipality, state agency, bureau, or department and the plural as well as the singular number." Thus, the housing authorities, port authorities, and hospital authorities described in Chs. 125, 154, and 159, F.S., to which you refer, are persons exercising a taxable privilege under s.212.03(1)(a), F.S., supra, when they rent real property.[10]
Therefore, moneys from the rental of real property by housing authorities, port authorities, and hospital authorities within the scope of the cited provisions are now subject to taxation pursuant to s. 212.031, F.S.
QUESTION TWO
You ask whether imposing a sales tax on rents pledged to defray the cost of bonds issued pursuant to ss. 125.019, 154.2331,159.15, 159.31, 159.50, 159.708, F.S., would impair the constitutionally protected right to contract.[11] My comments will be general as you have not advised me of specific contractual provisions regarding this issue.
The obligation of a contract is impaired in the constitutional sense when the substantive rights of the parties to the contract are changed[12] or where new and different liabilities are imposed thereunder.[13] As the Florida Supreme Court has stated[14] "[i]n order for a statute to offend the constitutional prohibition against enactment of laws impairing the obligation of contracts, the statute must have the effect of rewriting antecedent contracts, that is, of changing the substantive rights of the parties to existing contracts."[15]
Rents by an authority pursuant to s. 212.031, F.S.,[16] are payable by "[t]he tenant or person actually occupying, using, or entitled to the use of any property from which the rental or license fee is subject. . . ."[17] Further, the tax imposed by s.212.031, F.S., is in addition to the total amount of the rental or license fee and is due and payable at the time the rental or license fee payment is received by the lessor.[18] Thus, this tax is not imposed on the holders of bonds and does not appear to have an impact on their rights under a bond agreement. Nor does the imposition of a tax under s. 212.031, F.S., affect the substantive contractual rights of an authority with its bond holders. The courts of this state have held that an unconstitutional impairment of the obligation of contracts does not occur when a previously granted tax exemption is repealed.[19]
As taxes imposed pursuant to s. 212.031, F.S., supra, do not appear to change the substantive rights of the authority and its bondholders under their contractual bond agreement or impose new and different contractual liabilities on these parties, I cannot conclude that the imposition of such taxes would impair the constitutionally protected right to contract of these parties.
QUESTION THREE
The laws in force at the time of the making of a contract enter into and form a part of the contract as if they were expressly incorporated into it.[20] Thus, the exemptions from taxation for rents accruing to port authorities, hospital authorities, and housing authorities pursuant to ss. 125.019, 154.2331, 159.15,159.31, 159.50, and 159.708, F.S., were incorporated into contracts relating thereto regardless of specific reference to these exemptions. Further, as discussed in Question Two, repeal of a previously granted tax exemption does not result in the unconstitutional impairment of a contract.
Therefore, my answer to Questions One and Two would not be altered by the incorporation into the bond agreement of a provision reciting that the rents involved are exempt because the local government's resolution to issue the bonds was passed at a time when Florida law provided an exemption of the rents from sales tax.
Sincerely,
Robert A. Butterworth Attorney General
(gh)
[1] Section 5, Ch. 86-166, Laws of Florida.
[2] With regard to the specific topics of your inquiry:
 a. Section 125.019, F.S., provides an exemption from taxation for projects financed under the provisions of ss. 125.011-125.021, F .S. (including harbor and port facilities) and the income from such projects and from bonds issued under the provisions of s. 125.013, F.S. b. Section 154.2331(1), F.S., provides an exemption from taxation for projects undertaken by a health facilities authority under this part, for the income from such projects and from revenue bonds issued by the authority "except that such income shall be subject to the tax imposed pursuant to . . . chapter 220." c. A tax exemption is provided by s. 159.15(1), F.S., for "all of the properties, revenues, moneys and other assets owned and used in the operation of such projects [including harbor and port facilities], and all revenue bonds issued hereunder and the interest thereon shall be exempt from all taxation by the state or by any county, municipality, political subdivision, agency, or instrumentality thereof." d. A tax exemption is provided by s. 159.31, F.S., for "[t]he local agency [which] shall not be required to pay any taxes on any project or any other property owned by the local agency under the provisions of this part or upon the income therefrom. The bonds issued under the provisions of this part, their transfer, and the income therefrom. . . ." Pursuant to s. 159.27(5), F.S., a project may include a health care facility and a harbor or port facility. e. For purposes of Part III, Ch. 159, F.S., a "project" is any project defined in the Florida Industrial Development Financing Act (discussed supra in d). As stated in s. 159.50, F.S., "the authority shall not be required to pay any taxes on any project or any other property owned by the authority under the provisions of ss. 159.44-159.53 or upon the income therefrom. The bonds issued under the provisions of ss. 159.44-159.53, their transfer, and the income therefrom (including any profit made on the sale thereof) . . . shall at all times be free from taxation by the state or any local unit or political subdivision or other instrumentality of the state." f. A tax exemption for any project or any other property owned by a research and development authority or upon the income therefrom is provided by s. 159.708, F.S. Further, this section states that bonds issued pursuant to this part, their transfer, and the income therefrom (including profits made on the sale of such bonds) or other instruments given to secure the repayment of bonds issued in connection with a project financed under this part, "shall at all times be free from taxation by the state or any local unit or *1942 political subdivision or other instrumentality of the state."
[3] Section 159.15, F.S., was amended by s. 19, Ch. 86-152, Laws of Florida; s. 159.50, F.S., was amended by s. 21, Ch. 86-152, supra; s. 159.708, F.S., was amended by s. 23, Ch. 86-152, supra.
[4] Section 82, Ch. 86-152, Laws of Florida.
[5] State v. Dunmann, 427 So.2d 166 (Fla. 1983); State v. City of Boca Raton, 172 So.2d 230 (Fla. 1965); Kiesel v. Graham,388 So.2d 594 (1 D.C.A.Fla., 1980); AGO 71-395.
[6] Ideal Farms Drainage District v. Certain Lands, 19 So.2d 234
(Fla. 1944); State v. Haddock, 140 So.2d 631 (1 D.C.A.Fla., 1962).
[7] For the general proposition that the Legislature has the power and constitutional authority to tax commercial and residential leasehold interests in publicly-owned property, see, e.g., Williams v. Jones, 326 So.2d 425 (Fla. 1975).
[8] And see, s. 212.02(3), F.S., stating that a "[b]usiness" means "any activity engaged in by any person . . . with the object of private or public gain, benefit, or advantage, either direct or indirect."
[9] Section 212.02(17), F.S.
[10] Cf., AGO 80-47.
[11] Section 10, Art. I, State Const., and s. 10, Art. I, cl. 1, U.S. Const. 
[12] Hardware Mutual Casualty Company v. Carlton, 9 So.2d 359
(Fla. 1942).
[13] Manning v. Travelers Insurance Company, 250 So.2d 872
(Fla. 1971).
[14] Id. at 874.
[15] See also, Tri-Properties, Inc. v. Moonspinner Condominium Association, Inc., 447 So.2d 965 (1 D.C.A.Fla., 1984) (for a statute to offend the constitutional prohibition against impairment of contracts, it must have the effect of changing the substantive rights of parties to an existing contract); Commodore Plaza at Century 21 Condominium Association, Inc. v. Cohen,378 So.2d 307 (3 D.C.A.Fla., 1979) (statutory imposition of attorney's fees pursuant to a legislative enactment effective subsequent to the execution of a 99-year lease in which attorney's fees were not bargained for, materially changed the binding force of the agreement and would impair the obligation of the existing lease and contract between the parties and was unconstitutional as applied to that instrument); Hausler v. State Farm Mutual Automobile Insurance Company, 374 So.2d 1037 (2 D.C.A.Fla., 1979) (where statute in question was not in effect at time of contracting, it cannot be retroactively applied to alter obligations of that contract, and this is true even though the act which triggers the obligation occurs after the statute is enacted); AGO 83-47.
[16] Cf., s. 212.031(1)(a)8., F.S., which exempts from this provision "[p]roperty used at a port authority, as defined in s.315.02(2), exclusively for the purpose of oceangoing vessels or tugs docking, or such vessels mooring on property used by a port authority for the purpose of loading or unloading passengers or cargo onto or from such a vessel, or property used at a port authority for fueling such vessels."
[17] Section 212.031(2)(a), F.S.
[18] Section 212.031(3), F.S.
[19] See, Daytona Beach Racing and Recreational Facilities District v. Volusia County, 372 So.2d 419 (Fla. 1979) (leasehold of corporate speedway owner was not exempt from ad valorem taxation, and unconstitutional impairment of obligation of contracts did not occur when previously granted tax exemption was repealed); Straughn v. Camp, 293 So.2d 689 (Fla. 1974) (imposition of ad valorem taxation on leaseholds would not impair obligation of contract). Cf., Sovereign Camp, W.O.W., v. Lake Worth Inlet District of Palm Beach County, 161 So. 717 (Fla. 1935) (mere exercise of the power of taxation would not constitute an impairment of the obligation of contracts); and Gailey v. Robertson, 123 So. 692 (Fla. 1929).
[20] Tri-Properties, Inc. v. Moonspinner Condominium Association, Inc., supra, footnote 15 at p. 967. See also, State v. City of Coral Gables, 72 So.2d 48 (Fla. 1954); 10 Fla.Jur.2d Constitutional Law s. 315.